James FITZGERALD, Plaintiff
and Respondent,

v.

Gale CRITCHFIELD, Defendant
and Appellant.

No. 860041–CA.

Court of Appeals of Utah.

Oct. 8, 1987.

Joseph C. Rust, Salt Lake City, for defendant and appellant.

Brian C. Harrison, Provo, Harrison & Mullen, for plaintiff and respondent.

Before JACKSON, DAVIDSON and GREENWOOD, JJ.

## OPINION

JACKSON, Judge:

Defendant Critchfield appeals a judgment of the Fourth Judicial District Court that awarded plaintiff Fitzgerald $11,-367.50, plus interest and costs, due on an oral contract for feeding defendant's livestock. We affirm and remand.

In late 1982, the parties discussed a deal whereby Fitzgerald would feed and care for Critchfield's cattle. Fitzgerald testified that they agreed to a daily $1.00 per head rate, while Critchfield claimed that they agreed to a set dollar amount per ton of hay consumed. Critchfield delivered cattle to Fitzgerald in December and paid $3,000.00 on his account in February. On April 8, Critchfield surreptitiously removed some of his cattle without paying his accrued feed bill. On April 19, he picked up the remaining cattle.

Also in late 1982, but apparently prior to the time when these parties' claims against each other arose, Fitzgerald had filed a Chapter 11 Business Reorganization Petition under the Bankruptcy Code, 11 U.S.C. § 301 et seq. (1979), and had a confirmed plan of reorganization in effect. No trustee was appointed; instead, Fitzgerald was allowed to continue conducting his business affairs as a debtor in possession, 11 U.S.C. § 1107 (Supp.1987), i.e., as trustee of his estate for the benefit of his creditors.

Fitzgerald sued Critchfield on July 18, 1983 in state court for the unpaid feed bill and related claims. Critchfield then counterclaimed for contract breach and cattle conversion. Fitzgerald obtained a prejudgment writ of attachment on August 25, 1983, commanding the Utah County Sheriff to "attach and safely keep" forty-six beef cows and calves owned by Critchfield. After the required hearing on the attachment, the lower court ordered Fitzgerald to post a $25,000.00 bond for the writ to remain in force, but permitted Critchfield to obtain release of his cattle by posting a $14,000.00 bond. On September 16, Northwestern National Insurance Company (Northwestern) filed an Undertaking on Discharge of Attachment in the amount of $14,000.00 for "payment to the plaintiff of such sum [sic] may be recovered against the Defendant." The obligation was conditioned only on the release and return to defendant of his cattle, which occurred shortly after the filing of Northwestern's bond.

The parties thereafter proceeded to conduct a bench trial on March 22, 1984. The trial judge made and entered the following findings:

> On or about December 16, 1982, plaintiff and defendant entered into an agreement whereby plaintiff would provide feed for the cattle of defendant and defendant would pay therefore [sic] at the rate of $1.00 per head, per day.

> Plaintiff has fully performed all acts and conditions required to be performed by him under said agreement.

> Defendant has refused and failed to abide by said agreement in that he has failed to pay the sum of $11,367.50 which is the sum which is due and owing under said agreement.

> Defendant's Counterclaim is not supported by adequate evidence and such evidence as was offered was of a highly speculative nature.

Judgment for Fitzgerald was entered on April 23, 1984. Defendant's subsequent motion to amend the judgment was denied. On July 3, defendant filed a motion to set aside the judgment for lack of jurisdiction due to plaintiff's Chapter 11 bankruptcy, pending when this suit was filed. Plaintiff then served an order to show cause on Northwestern because of its refusal to pay on its undertaking. On July 30, an affidavit and memorandum in opposition to the show cause order were filed by attorneys on behalf of Northwestern, also urging a lack of state court jurisdiction. Northwestern appeared by its attorneys at the show

cause hearing on July 31. The lower court held that it had jurisdiction to render judgment and that Northwestern's bond "was intended to guarantee any judgment recovered by plaintiff against defendant." Defendant's motion to set aside the judgment was denied.

During the pendency of this appeal, Critchfield filed a petition for Chapter 11 bankruptcy on December 21, 1984. On April 24, 1986, the bankruptcy court ordered the proceedings converted to a Chapter 7 liquidation. Critchfield's debts were discharged on August 14, 1986, including Fitzgerald's scheduled judgment in this action. On August 27, 1986, the trustee filed her "Trustee's Report of Abandonment of Nominal or Encumbered Assets and Trustee's No Asset Report," stating there was no realizable equity in Critchfield's encumbered assets and his unencumbered assets were minimal.

On appeal, Critchfield has posed the following questions of substance for our determination: (1) In the absence of any federal bankruptcy court order lifting the automatic stay provisions of 11 U.S.C. § 362(a)(1) (Supp.1987), was the state district court without jurisdiction to enter judgment in this action, filed by respondent subsequent to his bankruptcy petition? (2) Were the findings in favor of the respondent clearly erroneous? (3) Did the trial court err in awarding respondent prejudgment interest from April 19, 1983? (4) Is respondent entitled to recover against Northwestern on its $14,000.00 attachment release undertaking even though the judgment against Critchfield has been discharged as his personal debt by his bankruptcy?

## STATE COURT JURISDICTION

■ Critchfield first contends that, because Fitzgerald was involved in bankruptcy proceedings when he filed this lawsuit and because there was no bankruptcy court order permitting him to go forward with this case in state court despite the automatic stay, the state court was "without jurisdiction" to proceed to trial and judgment. The automatic stay provision states in part:

[A] petition filed under ... this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose *before the commencement of the case* under this title....

11 U.S.C. § 362(a)(1) (Supp.1987) (emphasis added). As the Judiciary Committee Notes to section 362 point out, the automatic stay *protects the debtor* from all collection efforts, harassment, and foreclosure actions. It allows the debtor to attempt a repayment or reorganization plan and affords relief from the financial pressures that led to the bankruptcy in the first place. It does not shield from suit an entity or person owing money to the debtor. *See In re Precision Colors, Inc.,* 36 B.R. 429, 431 (S.D. Ohio 1984); *In re Stivers,* 31 B.R. 735, 737 (N.D.Cal.1983).

Once a bankruptcy petition is filed, section 362(a)(1) prohibits the institution or continuation of actions *against* the debtor, but it does not prevent actions *by* the debtor to marshal estate assets. *In re Saxon Indus., Inc.,* 43 B.R. 64, 67 (S.D.N.Y.1984). On the contrary, 11 U.S.C. Bankruptcy Rule 6009 (1984) specifically provides that, "[w]ith or without court approval, the trustee or debtor in possession may ... commence and prosecute any action or proceeding in behalf of the estate before any tribunal."

■ Section 362 likewise has no bearing on the power of the state court to proceed to judgment on appellant's counterclaim against respondent. By its terms, the automatic stay applied to actions that could have been brought or to claims that arose prior to the filing of Fitgerald's petition. In the case before us, there is no evidence or contention that appellant's counterclaim arose prior to Fitzgerald's petition. Although Fitzgerald might have sought the bankruptcy court's protection

from the counterclaim in some other manner, we hold that the automatic stay provided for in 11 U.S.C. § 362(a) (Supp.1987) was no bar to the initiation and complete litigation of this action in state court.[1]

## EVIDENCE SUPPORTING FINDINGS

■ Appellant assails the sufficiency of the evidence to support the trial judge's findings of fact. His brief contains a heading "FACTS," under which appellant has set forth both parties' "versions" of the facts. This does not constitute a sufficient marshalling of the evidence in support of the findings made by the court below. The requisite presentation of supporting evidence is also not found in the argument portion of appellant's brief. Appellant has, therefore, failed to meet his threshold burden on appeal, one that is neither elective nor optional. Nor will we perform this task for him. "To mount a successful attack on the trial court's findings of fact, an appellant *must* marshal *all* the evidence in support of the trial court's findings and then demonstrate that even viewing it in the light most favorable to the court below, the evidence is insufficient to support the findings." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985) (emphasis added). We therefore conclude that the trial court's findings were not clearly erroneous, Utah R.Civ.P. 52(a), and affirm the $11,367.50 judgment entered against appellant.

## PREJUDGMENT INTEREST

■ Appellant's brief mounted a three sentence attack against the court's award of prejudgment interest from April 19, 1983 at the rate of ten percent per annum. That attack does not contain a single citation to any pertinent case or statute. The trial court found that appellant owed but did not pay respondent a sum certain from April 19, 1983, the date the last of appellant's cattle were removed from respondent's premises. The law is clear that respondent is entitled to prejudgment interest on this overdue debt from that date until entry of judgment. *Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah 1977), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); *L & A Drywall, Inc. v. Whitmore Constr. Co.*, 608 P.2d 626, 629 (Utah 1980). Fitzgerald's failure to specifically plead a request for prejudgment interest is of no consequence because "the interest issue is injected by law into every action for the payment of past due money." *Lignell v. Berg*, 593 P.2d 800, 809 (Utah 1979). *Cf. Butler v. Wilkinson*, 740 P.2d 1244, 1263 (Utah 1987); Utah R.Civ.P. 54(c)(1). We affirm the inclusion of prejudgment interest in the judgment.

## RECOVERY ON ATTACHMENT RELEASE BOND

Judgment was entered against appellant Critchfield on April 23, 1984, and the appellate process commenced that June. For reasons that are not apparent from the record, appellant did not file a supersedeas bond. Critchfield filed his petition for bankruptcy on December 21, 1984, three days after filing his brief on appeal.[2] Be-

---

1. Critchfield and Northwestern have feebly tried to phrase this issue in terms of subject matter jurisdiction which, if lacking in the state court, could not be conferred by the parties. It cannot reasonably be argued, however, that the state court was without subject matter jurisdiction over this contract dispute. The federal statute in effect at the pertinent times (subsequently repealed) gave the federal district courts exclusive jurisdiction over all cases under the bankruptcy code, 28 U.S.C. § 1471(a) (Supp.1987), but it did not withdraw from the state courts subject matter jurisdiction over any suit involving a bankruptcy debtor. *Cf. Morford v. City of Omaha*, 206 Neb. 271, 292 N.W.2d 778 (1980). Quite to the contrary, Section 241(a) of the 1978 Bankruptcy Act explicitly conferred on federal district courts original *but not exclusive* jurisdic-

tion over "all civil proceedings ... related to cases under Title 11." 28 U.S.C. § 1471(b) (Supp.1987) (repealed 1984). *See In re Comm. of Unsecured Creditors of F S Communications Corp.*, 760 F.2d 1194 (11th Cir.1985); *In re Bible Voice, Inc.*, 34 B.R. 733, 736 (C.D.Ca.1983). Furthermore, even if the automatic stay was applicable to either Fitzgerald's claims or Critchfield's counterclaim (which it is not), "it is well-settled that the automatic stay of section 362 acts as a stay of court proceedings but does not deprive the state court of jurisdiction over the matter." *In re Clowser*, 39 B.R. 883, 884 (E.D. Va.1984).

2. A plethora of bankruptcies involving parties to appeals has prompted this Court to require all counsel to certify, when a case is calendared for

cause of this and until oral arguments herein, neither party had addressed the issue of whether Critchfield's subsequent discharge in bankruptcy precludes Fitzgerald's recovery from Northwestern on its attachment release bond.

Utah R.Civ.P. 64C(f) governs the release of property or the discharge of an attachment.[3] Fitzgerald secured a valid prejudgment attachment of forty-six cows and calves owned by Critchfield. In order to obtain a discharge of the attachment, Northwestern furnished the required $14,-000 bond in the form of an undertaking that acknowledged its joint and several liability for payment to Fitzgerald "of such sum may [sic] be recovered against [Critchfield]." In an order issued after the show cause hearing on Northwestern's failure to pay, the trial court ruled that the Rule 64C bond was intended to guarantee any judgment recovered by Fitzgerald against Critchfield. *See generally* Restatement of Security § 201 (1941). That conclusion has not been challenged on appeal.

■ Utah R.Civ.P. Rule 64C(g) requires the undertaking to "provide that each surety submits himself to the jurisdiction of the court" and that the surety's "liability may be enforced on motion and upon such notice as the court may require without the necessity of an independent action." Although Northwestern's undertaking does not contain the precise words submitting to the jurisdiction of the court, the bond will be enforced according to the terms of the authorizing rule. *See South Carolina Pub. Serv. Comm'n v. Colonial Constr. Co.,*

274 S.C. 581, 266 S.E.2d 76, 78 (1980). Furthermore, Northwestern made a general appearance at the show cause hearing, thereby submitting itself to the court's jurisdiction to enforce payment on its undertaking. *Barber v. Calder,* 522 P.2d 700, 702 n. 4 (Utah 1974); *Frandsen v. Holladay,* 739 P.2d 1111, 1114 (Utah App. 1987).

■ Pursuant to Utah R.Evid. 201(a), this Court takes judicial notice of the fact that the judgment we affirm today was discharged as to appellant Critchfield on August 14, 1986, by order of the United States Bankruptcy Court for the District of Utah, Bankruptcy No. 84A–03477. Entry of judgment against Critchfield in April of 1984 fixed Northwestern's liability and satisfied the only condition of the undertaking. The effect of Critchfield's subsequent discharge in bankruptcy is neither payment nor extinguishment of the judgment. The obligation remains in existence, but it has been divested of its character as a legally enforceable personal liability of Critchfield. *National Fin. Co. of Utah v. Valdez,* 11 Utah 2d 339, 359 P.2d 9, 10 (1961). Although execution on the judgment is now barred as to Critchfield, 11 U.S.C. § 524(a) (1979), his post-judgment filing and discharge in bankruptcy have not released Northwestern from its obligation to Fitzgerald under the bond. "[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e) (1979). *See Waller v. Heinrichs,* 133 Wash. 7, 233 P. 23, 24 (1925) (applying similar provision in former stat-

---

oral argument, that the appeal process has not been automatically stayed by the filing of a bankruptcy petition.

3. **(f) Release of property or discharge of attachment; undertaking required; justification of sureties.** At any time, either before or after the execution of the writ of attachment, the defendant may obtain a release of any property or a discharge of the attachment, as follows:

(1) To secure a discharge of the attachment the defendant shall furnish a bond, with sufficient sureties, in a sum of not less than double the amount claimed by the plaintiff, but not less than $50.00 in amount. The conditions of such undertaking shall be to the effect that if the plaintiff recovers judgment, the defendant will pay the same, together with interest and all costs assessed against him, not exceeding the sum specified in the undertaking.

(2) To secure a release of property from the attachment the defendant shall furnish a bond, with sufficient sureties, in a sum not less than the value of the property to be released, but in no case in an amount greater than necessary to obtain a discharge of the attachment. The conditions of such undertaking shall be to the effect that if the plaintiff recovers judgment, the defendant will pay the same, together with interest and all costs assessed against him, not exceeding the sum specified in the undertaking.

ute, Bankruptcy Act of 1898). *See also* Restatement of Security § 202 (1941).

The judgment of the lower court is affirmed, and the case is remanded for entry of judgment against Northwestern National Insurance Company on its attachment release bond in accordance with this opinion. Costs on appeal are awarded to respondent Fitzgerald.

GREENWOOD and DAVIDSON, JJ., concur.