**2013 UT App 158**

## THE UTAH COURT OF APPEALS

BEVERLY HOLLADAY
Plaintiff,

*v.*

DAVID A. STOREY,
Defendant, Third-party Plaintiff, Appellant,
and Cross-appellee,

*v.*

RICHARD B. HOLLADAY AND JACK M. WOODCOCK,
Third-party Defendants, Appellees, and Cross-appellants.

Opinion
No. 20090824-CA
Filed June 20, 2013

Seventh District, Moab Department
The Honorable Lyle R. Anderson
No. 030700194

Craig C. Halls, Attorney for Appellant and Cross-
appellee
C. Val Morley and Ryan A. Morley, Attorneys for
Appellees and Cross-appellants

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGE JAMES Z. DAVIS concurred. JUDGE
CAROLYN B. MCHUGH concurred in the result.

CHRISTIANSEN, Judge:

¶1     This appeal and cross-appeal arise from a bench trial ruling that removed David A. Storey as manager of Castlerock Inn, LLC (the Company), expelled him as a member of the Company, and backdated his expulsion from and the valuation of his interest in

the Company. We affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND[1]

¶2    In April 2000, Storey, together with Richard B. Holladay and Jack M. Woodcock (Appellees) and several other individuals, formed the Company to construct and operate an inn in Moab, Utah. The members executed an Operating Agreement for the Company by which Storey was appointed as the manager of the Company. After two of the members voluntarily withdrew from the Company, the lending bank required the Company to amend the Operating Agreement. Accordingly, in February 2003, the parties executed an Amended Operating Agreement (the AOA). Pursuant to the AOA, Storey remained the Company's manager, and Storey and the Appellees each held a one-third interest in the Company.

---

[1]We limit our discussion to only those background facts necessary to resolve the issues on appeal. Both parties have unnecessarily complicated the factual and legal issues below and on appeal by adding irrelevant material. We remind counsel that appellate briefs "must be concise . . . and free from burdensome, irrelevant, [and] immaterial . . . matters." *See* Utah R. App. P. 24(k) ("Briefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court, and the court may assess attorney fees against the offending lawyer."). Counsel should keep in mind that, aside from violating the rules, the addition of irrelevant facts detracts from rather than adds to the value of an argument. Given the numerous and overly complicated facts and claims, we commend the trial court for making clearly-articulated findings of facts and conclusions of law.

¶3      Sometime around June 2003, Appellees took over Storey's management duties. In September 2003, Beverly Holladay filed a complaint against Storey, asserting claims unrelated to the present appeals. Storey filed counterclaims against Beverly Holladay and a third-party complaint against Appellees, Shawn Morley, and others.[2] Storey asserted, among other things, derivative claims on behalf of the Company alleging conversion and unjust enrichment against Appellees and others and a demand for a judicial accounting. Storey also sought dissolution of the Company and payment of proceeds based on his percentage of ownership pursuant to section 48-2c-1213 of the Revised Limited Liability Company Act (the Act) or, in lieu of dissolution, that the Company purchase his one-third interest in the Company pursuant to section 48-2c-1214 of the Act. *See* Utah Code Ann. §§ 48-2c-1213, -1214 (LexisNexis 2010).[3] In turn, Appellees filed counterclaims against Storey, alleging breach of fiduciary duty, conversion, unjust enrichment, and defamation and demanded Storey's expulsion as a member of the Company, Storey's removal as a manager of the Company, and a judicial accounting and dissolution of the

---

[2]The trial court later dismissed the claims and counter-claims between Beverly Holladay and Storey pursuant to a mediation agreement. The trial court also dismissed Storey's claim against Morley pursuant to the same mediation agreement.

[3]Utah's Revised Limited Liability Company Act, *see generally* Utah Code Ann. §§ 48-2c-101 to -1902 (LexisNexis 2010), was repealed effective July 1, 2013, and replaced with Utah's Revised Uniform Limited Liability Company Act, *see generally id.* §§ 48-3-101 to -1405 (LexisNexis Supp. 2012), effective the same date. Because the Revised Limited Liability Company Act was in effect at all times relevant to this appeal, we refer to that act throughout this opinion.

Company pursuant to section 48-2c-1210 of the Act. *See id.* § 48-2c-1210.

¶4     Specifically, Appellees sought "to invoke the authority of the [Act] and, pursuant to Utah Code [section] 48-2c-710(3), obtain a judicial expulsion of Storey as both a member of and the sole manager of the Company." Storey subsequently filed a motion for partial summary judgment seeking a declaration that he had the right to manage the Company under the AOA. The trial court granted Storey's motion after determining that the AOA clearly provides "that Storey may be removed as a manager only if he so chooses. No other grounds for his removal are even suggested in the Agreement." In its order granting partial summary judgment to Storey, the trial court noted that Appellees were not left without remedy under the Act, specifically pursuant to section 48-2c-809, but because they had never "expressly invoked" that section "and sought an order of this court removing Storey as manager," the trial court was unable to deny the relief Storey sought. However, the trial court stayed the implementation of the judgment pending, among other things, Appellees' request for an injunction removing Storey as a manager. Appellees thereafter filed a motion for a preliminary injunction requesting removal of Storey as a manager pursuant to Utah Code section 48-2c-809. In October 2005, the trial court issued the injunction.

¶5     As a result of a stipulation among the parties, in December 2003, the trial court permitted Appellees to enter into a franchise agreement for the sale of the inn. After that, Appellees contributed additional capital to the Company.

¶6     Following the conclusion of a ten-day bench trial in the spring and summer of 2009, the trial court entered findings of fact, conclusions of law, and an order removing Storey as the manager of the Company, expelling Storey as a member of the Company effective December 31, 2005, and valuing Storey's interest in the

Company as of December 31, 2005. The trial court ordered Storey's removal as manager based on its findings of numerous instances of Storey's mismanagement and misconduct, including depositing a Company check and an IRS check into his personal account without adequate explanation and altering invoices for his personal gain. The trial court found that Storey's

> removal as manager was . . . necessary for the success of the enterprise[, and t]hat even though there was an underlying problem of lack of money, [Storey] was not dealing, in a productive fashion, with the partners, the suppliers, the vendors and employees and was not staying on top of the issues that arose.

The trial court ordered Storey's expulsion as a member for the same reasons as his removal as a manager, as well as for his "unlawful conduct that adversely and materially affect[ed] the Company's business, or . . . conduct relating to the Company's business which makes it not reasonably practical to carry out business with the members." Finally, the trial court found that "Storey breached his fiduciary duty to the other Members of the Company."

¶7     The trial court set the effective expulsion and valuation date to December 31, 2005, based on the parties' conduct. It found that this date was appropriate due to Storey's mismanagement, misconduct, dishonesty, breach of fiduciary duty, and lack of success as a manager as of that date. The trial court also justified the valuation date based on Appellees' failure to adhere to the AOA and on their failure to "timely access the Court to implement their decisions as their agreement required and as the law requires." The trial court explained that it was not until approximately 2005 that Appellees started to "seriously" follow the AOA and statutes. The trial court also found that Appellees'

"decision . . . to convert to a franchise[] was a substantial reason for the success of the Company and . . . the inn during and after year 2005."

¶8    Storey appeals the ruling, raising numerous issues on appeal. Appellees raise four issues in their cross-appeal.


ISSUES AND STANDARDS OF REVIEW

¶9    Storey first argues that the trial court erroneously based its conclusion that he breached a fiduciary duty owed to Appellees, which justified his removal and expulsion from the Company, upon conduct that took place prior to the adoption of the AOA and that Appellees thus "forgave" any misconduct. As a result, Storey argues that Appellees failed to state a claim for breach of fiduciary duty. We decline to consider this issue because Storey failed to preserve it before the trial court. "To preserve an issue for appellate review, a party must first raise the issue in the trial court, giving that court an opportunity to rule on the issue." *Weiser v. Union Pac. R.R. Co.*, 2010 UT 4, ¶ 14, 247 P.3d 357 (citation and internal quotation marks omitted). The preservation rule applies even to an issue of a party's failure to state a claim. *See Mack v. Utah State Dep't of Commerce, Div. of Sec.*, 2009 UT 47, ¶ 14, 221 P.3d 194 ("[I]ssues brought under the exception of Rule 12(h) may be raised before or during trial. However, Rule 12(h) certainly does not mean that failure to state a claim can be raised for the first time on appeal." (citation and internal quotation marks omitted)). Therefore we decline to address this issue.

¶10    Next, Storey contends that the trial court erroneously backdated his expulsion from the Company to December 31, 2005. In a related claim, Storey contends that the trial court erroneously backdated the valuation of his interest in the Company to the same

date. According to Storey, the Act does not grant the trial court such authority. "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion." *OLP, LLC v. Burningham*, 2008 UT App 173, ¶ 10, 185 P.3d 1138 (citation and internal quotation marks omitted).

¶11 Storey asserts several other claims of error. First, he argues that the trial court erroneously created nonexistent provisions in the AOA, which placed Appellees in a more favorable position than the parties originally contracted for, thereby violating Storey's right to contract. Next, Storey maintains that the trial court erred when it adopted the parties' interim mediation agreement, resulting in manifest injustice to him. Finally, Storey asserts that the trial court improperly failed to provide for prejudgment interest on the value of his equity in the Company during the pendency of the expulsion proceedings. The interpretation of the AOA and mediation agreement is a "'[q]uestion[] of contract interpretation . . . confined to the language of the contract itself [and is a] question[] of law, which we review for correctness.'" *KeyBank Nat'l Ass'n v. Systems W. Computer Res., Inc.*, 2011 UT App 441, ¶ 13, 265 P.3d 107 (quoting *Mellor v. Wasatch Crest Mut. Ins. Co.*, 2009 UT 5, ¶ 7, 201 P.3d 1004). With regard to Storey's prejudgment interest claim, "[t]he trial court's award of prejudgment interest, and the amount thereof, present[] a question of law which we review for correctness." *Peterson v. Jackson*, 2011 UT App 113, ¶ 15, 253 P.3d 1096 (alterations in original) (citation and internal quotation marks omitted).[4]

---

[4]Appellees filed an objection to Storey's Brief of Cross-Appellee and Reply Brief of Appellant because it introduced matters that were not in reply to Appellees' response or in response to their cross-appeal issues. *See* Utah R. App. P. 24(g)(3)

(continued...)

¶12     On cross-appeal, Appellees argue that the trial court erroneously valued Storey's interest as of December 31, 2005, rather than as of November 2003. We consider Appellees' date-of-valuation issue with Storey's and review the trial court's interpretation and application of the Act for correctness. *See OLP, LLC*, 2008 UT App 173, ¶ 10.

¶13     Appellees also challenge the trial court's denial of their request for punitive damages because the trial court found that Storey's conduct was egregious and that Storey had breached his fiduciary duty to the other members of the Company. "Whether punitive damages [should be] awarded is generally a question of

---

[4](...continued)
("The appellant shall then file one brief, entitled Reply Brief of Appellant and Brief of Cross-Appellee, which shall reply to the Brief of Appellee and respond to the Brief of Cross-Appellant."). We agree and accordingly decline to consider the matters of Storey's claim of fraudulent inducement to enter into the mediation stipulation and the application of section 6.1 of the AOA to the issues before us.

Appellees also correctly point out that Storey failed to cite to the record demonstrating that the issues he argues on appeal were preserved. *See id.* R. 24(a)(5)(A) (stating that the appellant's brief must include "citation to the record showing that the issue was preserved in the trial court; or . . . a statement of grounds for seeking review of an issue not preserved in the trial court"). However, the parties have addressed the issues as if they were preserved, and except where otherwise noted, we have exercised our discretion to independently review the record and determine whether Storey preserved his claims below. Where we are satisfied that Storey's claims were adequately preserved, we address the merits of those claims despite Storey's failure to comply with rule 24.

fact within the sound discretion of the [fact finder], and will not be disturbed absent an abuse of discretion." *Bennett v. Huish*, 2007 UT App 19, ¶ 11, 155 P.3d 917 (alterations in original) (citation and internal quotation marks omitted).

¶14    Finally, Appellees contend that the trial court erred by failing to grant their request for attorney fees on their breach of fiduciary duty claim. "We review the denial of an award of attorney fees as a matter of law for correctness." *PC Crane Serv., LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 6, 273 P.3d 396.

ANALYSIS

I. Effective Date of Storey's Expulsion and Valuation

¶15    The primary issue on appeal is whether the trial court erred in setting the effective date for Storey's expulsion from the Company and for the valuation of Storey's interest in the Company as December 31, 2005. Storey argues that the effective date for both expulsion and valuation should be the date of the trial court's determination at trial. Appellees argue that the effective date for the valuation of Storey's interest should be no later than November 2003, when Appellees filed a counterclaim against Storey in which they sought Storey's expulsion as a member. "[B]ecause the parties do not challenge the trial court's lengthy findings of fact, we accept these findings as true in our analysis on appeal." *See d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 24, 147 P.3d 515.

A. Storey's Expulsion

¶16    In reaching its conclusion that it could retroactively determine both the effective date of Storey's expulsion and the date for valuing his interest in the Company, the trial court relied on the

Utah Supreme Court's decision in *CCD, LC v. Millsap*, 2005 UT 42, 116 P.3d 366. In particular, the trial court ruled,

> [It] is not clear from the law that [the trial court] has the authority to value a member's interest at a time other [than] that [of] the present and the Court finds that the Utah cases are not exactly on point; however[,] *Millsap* suggests that a party can be expelled and his or her interest may be valued retroactively. Accordingly, the Court finds that it has the authority, the responsibility and that the equities require, in determining the expulsion date, that the expulsion date should have some connection with the conduct of the parties.

Thus, despite the lack of explicit authority in the Act or the AOA, the trial court applied the reasoning of *Millsap* to determine that it had authority to set both the expulsion date and the valuation date "as early as 2003, perhaps even earlier, or perhaps even as late as the date of [trial]." The trial court ruled that evidence of Storey's misconduct and mismanagement supported his expulsion based on an earlier date. The trial court also ruled that it could set a later date based on evidence that Appellees' "decision . . . to convert to a franchise[] was a substantial reason for the success of the Company and the inn during and after year 2005" and that Appellees did not "follow their own Operating Agreement" or "start[] to look to the statutes and to follow [them] seriously" "until approximately 2005." The trial court ultimately found it appropriate to set the expulsion and valuation date to December 31, 2005.

¶17    Storey argues that the trial court erred by retroactively setting the effective date of his expulsion because, pursuant to Utah Code section 48-2c-710, the date of expulsion must be the same as the date of judicial determination of expulsion. He also argues that

the trial court erroneously consolidated the issue of the date of Storey's expulsion with the issue of the valuation of his interest.

¶18   Although the parties suggest that the Company was dissolved,[5] we do not see any indication in the trial court's August 31, 2009 order, or in any order entered thereafter, that it ever ordered the dissolution of the Company pursuant to Utah Code section 48-2c-1213. *See* Utah Code Ann. § 48-2c-1213 (LexisNexis 2010) (explaining that, upon "determin[ing] that one or more grounds for judicial dissolution described in Section 48-2c-1210 exist, [the court] may enter a decree dissolving the company and specifying the effective date of the dissolution"). Rather, the trial court ruled that

> it is not required to determine the allocation of the split of the Company's equity between [the Appellees] and [the trial court] will only make findings with respect to . . . Storey's portion of the Company's equity. However, for purposes of determining . . . Storey's share, the Court must determine each Member's capital contribution as of December 31, 2005. The court finds it appropriate to determine each Member's capital contribution as of the valuation date of December 31, 2005, based upon

---

[5]In his third-party complaint, Storey sought judicial dissolution of the Company, as did Appellees in their counter-claim. In his opening brief, Storey argues that valuation occurs on the date of the dissolution of the Company, which he suggests is the same as the date of the judicial determination of expulsion. However, in his reply brief, Storey has had a change of heart and asserts that the Company has never been dissolved. Appellees contend that although the Company was never formally dissolved, it was de facto dissolved effective December 31, 2005.

the contributions (or capital account balances) the auditor has allocated to each Member as of said date.

In its orders, the trial court stated that it "has not been asked by . . . Holladay or . . . Woodcock, and does not issue[] any order allocating . . . Holladay's and . . . Woodcock's respective share of the balance of the Company's equity." Thus, because the trial court did not order dissolution, we do not consider whether it correctly dissolved the Company as of December 31, 2005.

¶19    The Act does not explicitly provide a method for a judicial determination of the date of an expulsion. Nor has the legislature specifically addressed whether a court may retroactively apply an expulsion date. The provision that provides the most guidance in determining whether the trial court was correct in retroactively affixing the date for Storey's expulsion from the Company is Utah Code section 48-2c-710, which states,

A member of a company may be expelled:
(1) as provided in the company's operating agreement;
(2) by unanimous vote of the other members if it is unlawful to carry on the company's business with the member; or
(3) on application by the company or another member, by judicial determination that the member:
(a) has engaged in wrongful conduct that adversely and materially affected the company's business;
(b) has willfully or persistently committed a material breach of the articles of organization or operating agreement or of a duty owed to the company or to the other members under Section 48-2c-807; or

> (c) has engaged in conduct relating to the company's business which makes it not reasonably practicable to carry on the business with the member.

*Id.* § 48-2c-710.

¶20 We agree that *Millsap* is instructive to our analysis of whether the trial court correctly determined that it had the authority to make retroactive the effective date of Storey's expulsion from the Company. There, Millsap, a member of a limited liability company called CCD, misappropriated certain company funds. *CCD, LC v. Millsap*, 2005 UT 42, ¶ 16, 116 P.3d 366. Millsap admitted to the misappropriation but claimed that he had thereafter complied with an amended operating agreement, which allowed him to be reinstated as a member, which in turn allowed him to retire with all of the rights due to a retiring member. *Id.* ¶¶ 8–10. The other members disagreed and sought a judicial determination of expulsion under the Act. *See id.* ¶ 8. Millsap argued that he was no longer a member of the company once he announced his intent to retire from CCD because the operating agreement provided that a member could withdraw from the company by retiring. *Id.* ¶ 18. Relying on section 48-2c-709, he further reasoned that, because he was no longer a member, he could not be expelled and was entitled to his retirement benefits. *Id.*; *see also* Utah Code Ann. § 48-2c-709 ("A member may withdraw from a company at the time or upon the happening of events specified in and in accordance with the articles of organization or operating agreement."); Utah Code Ann. § 48-2c-710 (providing conditions of a *member's* expulsion).

¶21 The Utah Supreme Court concluded that the Act authorized the judicial determination of Millsap's expulsion even though Millsap's retirement announcement preceded such determination.

*See Millsap*, 2005 UT 42, ¶¶ 28–29. The court explained that the legislature had designed the Act to "expressly bar[] members from bargaining for expulsion rules that varied from those set out in section 710." *Id.* ¶ 23; *see also* Utah Code Ann. § 48-2c-120(1) ("A company's articles of organization or operating agreement may not: . . . vary the right to expel a member based on any event specified in Subsection 48-2c-710(3)."). Thus, "despite acknowledging the power of limited liability company members to govern their affairs by contract," the policy behind these statutes ensures that any member, or the company itself, may expel a member whose conduct makes him eligible for expulsion. *Millsap*, 2005 UT 42, ¶¶ 23–29; *see* Utah Code Ann. § 48-2c-710(3) (providing for expulsion of a member who has "has engaged in wrongful conduct that adversely and materially affected the company's business," who "has willfully or persistently committed a material breach of the articles of organization or operating agreement or of a duty owed to the company or to the other members under Section 48-2c-807," or who "has engaged in conduct relating to the company's business which makes it not reasonably practicable to carry on the business with the member."); *see generally* Utah Code Ann. § 48-2c-807 (explaining the duties of managers and members). The court emphasized that this policy objective overrode the considerations of timing relied on by Millsap. *See Millsap*, 2005 UT 42, ¶ 28 ("The proper focus of inquiry should be on the merits of claims concerning a limited liability company member[]'s conduct and not on reviewing the results of photo finishes to the courthouse door."). The supreme court then affirmed the trial court's conclusion that sufficient grounds existed to expel Millsap as a member of CCD. *Id.* ¶ 29.

¶22    Here, Storey does not challenge the trial court's findings of fact concerning its justification for ordering his expulsion. The trial court found that Storey should be expelled as a member for numerous occurrences of mismanagement and misconduct,

"unlawful conduct that adversely and materially affect[ed] the Company's business, or . . . conduct relating to the Company's business which makes it not reasonably practical to carry out business with the members." The trial court also found that "Storey breached his fiduciary duty to the other Members of the Company."

¶23 As *Millsap* instructs, although subsection 48-2c-710(3) "provides sparse procedural direction," it is significant not in providing for *when* an expulsion occurs but rather *how* it occurs. *See id.* ¶¶ 21–22. To understand how an expulsion occurs, one must understand the purpose of the Act, which is not "to define and regulate membership" or "fix boundaries between the tenure of a member and the right to expel a member," but instead to "regulat[e] the formation and operation of limited liability companies," including a limited liability company's authority to expel a member for his or her wrongful acts. *See id.* ¶¶ 22–23.

¶24 The policy expressed in *Millsap* is exactly the policy on which the trial court relied when it backdated Storey's expulsion to December 31, 2005, based in part on its findings that Storey engaged in mismanagement, misconduct, and dishonesty; breached his fiduciary duty; and lacked success as a manager as of that date. In choosing the date of its judicial determination for Storey's expulsion and backdating the expulsion to December 31, 2005, the trial court focused on Storey's conduct that prompted the expulsion. As the supreme court indicated in *Millsap*, if the legislature had deemed the timing considerations of voluntary secession or expulsion important enough, it would have set parameters for this in the Act. *See id.* ¶ 25. Instead, the objective of the Act is to allow members to seek judicial determination for an expulsion based on another member's wrongful acts.

¶25    For that reason, the trial court did not err in backdating Storey's expulsion. In fact, it could have backdated Storey's expulsion as early as 2003 based on his misconduct. Yet, the trial court also found that Appellees did not conduct themselves according to the AOA or the Act, or seek to remove Storey as a member before 2005, when they first requested a preliminary injunction. We see nothing in the AOA or the Act that precluded the trial court from backdating Storey's expulsion; the case law supports the trial court's discretion to do so, and the trial court's findings support the December 31, 2005 date. We therefore affirm the trial court's date of expulsion.

B. Valuation of Storey's Interest

¶26    Storey argues that the trial court erred in setting the valuation of his interest in the Company as of December 31, 2005, because valuation had to occur as of the time of the judicial determination of expulsion. Storey contends that even as an expelled member, he was an assignee, and, as such, retained his interest in the Company until it was dissolved by the entry of the judicial determination at trial in 2009.

¶27    In contrast, Appellees point out that there is no particular statute or precedent that *prohibited* the trial court from setting the date of valuation to the date of expulsion. In their cross-appeal, they argue that the trial court erroneously valued Storey's interest as of December 31, 2005, rather than November 2003, approximately when Appellees filed their counterclaim in response to Storey's misconduct and mismanagement.

¶28    Similar to its silence concerning the date of expulsion, the Act does not outline a method for determining the date of valuation of a member's share in a limited liability company. However, section 48-2c-708 provides,

> A person who is a member of a company ceases to be
> a member of the company and the person or the
> person's successor in interest attains the status of an
> assignee as set forth in Section 48-2c-1102, upon the
> occurrence of one or more of the following events: . . .
>> (e) the member is expelled as a member
> pursuant to Section 48-2c-710 . . . .

Utah Code Ann. § 48-2c-708(1)(e) (LexisNexis 2010). Pursuant to section 48-2c-1102, "An assignment only entitles the assignee to receive, to the extent assigned, any share of profits and losses and distributions to which the assignor would be entitled." *Id.* § 48-2c-1102.

¶29    We agree with Storey that upon his expulsion he became an assignee of future distributions or contributions pursuant to Utah Code section 48-2c-708. *See id.* § 48-2c-708(1)(e). However, nothing in the Act, including section 48-2c-1102, dictates when an assignee's partnership interest can or must be valued. *See id.* § 48-2c-1102. We do not believe that sections 48-2c-708(1)(e) and 48-2c-1102 support Storey's contention that, because he became an assignee after being expelled, his interest should *necessarily* be valued up until the time of the judicial determination or judicial dissolution.

¶30    If the court were precluded from valuing an expelled member's interest as of a particular date based on that member's misconduct, it would undermine the effectiveness of the right to judicially expel a member pursuant to subsection 48-2c-710(3). *See id.* § 48-2c-710(3) ("A member of a company may be expelled . . . by judicial determination that the member . . . has engaged in wrongful conduct that adversely and materially affected the company's business."). If the court is not permitted to set the date for the valuation of the expelled member's interest in the company

to the time of the commission of misconduct that led to expulsion, then that interest could not be valued until the company is dissolved. This would mean that the expelled member would continue to benefit from profits or, likewise, to suffer any losses of the company until such time as the company dissolves. It is far more logical that the legislature intended for the expelled member to be deemed an assignee only until the court determines the amount to be paid for the expelled member's interest in the company, because it would be pointless for that expelled member to continue as an assignee once the value of the interest is fixed. We thus reconcile sections 48-2c-708(1)(e) and 48-2c-1102 with 48-2c-710(3) by concluding that a member becomes an assignee pursuant to section 48-2c-708(1)(e) upon expulsion but that this assignee status continues only until valuation and does not preclude the retroactive valuation of the expelled member's interest when appropriate.

¶31     *Millsap* is again instructive. As in this case, a membership interest was at stake in *Millsap*. *See CCD, LC v. Millsap*, 2005 UT 42, ¶¶ 8–10, 116 P.3d 366. According to that operating agreement, Millsap was slated to receive his benefits as a retiring member, including the sale of his interest to either the company or its members. *Id.* ¶ 8. CCD pursued Millsap's expulsion in order to avoid providing him the benefits, including his interest, as a retiring member. *Id.* Although the valuation of Millsap's interest was not challenged per se, the chronology of his retirement and expulsion placed his membership interest at the heart of the issue. *See id.* ¶¶ 18–19. Despite Millsap's prior announcement of his intent to retire, the supreme court affirmed the judicial determination of Millsap's expulsion, which made Millsap ineligible to take advantage of the retirement provisions of the CCD's operating agreement. *Id.* CCD's successful expulsion of Millsap precluded him from receiving retirement benefits and thus reaping a profit,

despite having engaged in the wrongful misappropriation that had led to his expulsion. *See id.* ¶ 8, 35.

¶32    Here, by backdating Storey's expulsion and the valuation of his interest to December 31, 2005, the trial court prevented Storey from reaping the benefits of the increased profits the Company enjoyed after his wrongful acts were discovered and stopped but before judicial expulsion could be accomplished. Accordingly, the trial court denied Storey the windfall he would have obtained had his interest been valued as of the date of the trial court's determination of expulsion in 2009.[6]

¶33    In their cross-appeal, Appellees argue that the trial court had discretion to set this date "where equities warrant," which should have been November 2003, when Appellees filed their counterclaim against Storey as a result of his misconduct. As the trial court indicated, it had the discretion to affix the valuation to

---

[6]It is also significant that, based on his counterclaim filed in October 2003, Storey sought judicial dissolution of the Company and payment of proceeds at that time based on his percentage of ownership pursuant to Utah Code section 48-2c-1213, or in lieu of dissolution, that the Company purchase his one-third interest in the Company pursuant to section 48-2c-1214. *See* Utah Code Ann. § 48-2c-1213 (LexisNexis 2010) (providing the procedure for the court to enter a decree of dissolution); *id.* § 48-2c-1214 (providing the procedure for the company or a member to purchase the interest in the company of the member who petitioned the court for dissolution). Although the trial court did not dissolve the Company, it allowed Storey to receive his share of the Company's valuation as of 2005. If the trial court had instead valued Storey's interest as of the date of trial in 2009, Storey would have received profits well beyond the date when he requested valuation.

this date based on its determination that Storey engaged in misconduct. In addition, the trial court also had discretion to affix the date based on its findings of Appellees' conduct. The trial court entered specific factual findings that Appellees did not act pursuant to the terms of the Act or the AOA to remove Storey as a member of the Company until 2005. We agree that the trial court correctly determined that it had discretion to set the valuation date based on the equities in the case. Because the trial court's findings support the December 31, 2005 date, we further conclude that the trial court did not exceed that discretion in determining the valuation date on this basis, and we affirm the trial court's date for valuation of Storey's interest.

¶34    Finally, Storey challenges the trial court's failure to account for disbursements of income in its award to Storey for 2003 through 2005. Storey fails to demonstrate where he preserved this issue, as he is required to do. *See* Utah R. App. P. 24(a)(5)(A) (stating that the appellant's brief must include "citation to the record showing that the issue was preserved in the trial court; or . . . a statement of grounds for seeking review of an issue not preserved in the trial court"). Particularly in a case such as this, with a voluminous record and numerous issues, it is not the appellate court's burden to comb through the record to verify whether, and where, Storey preserved this issue, and we therefore decline to address it. *See Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 32, 240 P.3d 107 (declining to consider an issue because appellant "failed to establish that [it] was preserved").

## II. Interpretation of the AOA

¶35    Storey argues that the trial court erroneously interpreted the AOA by creating nonexistent provisions that placed Appellees in better positions and Storey in a worse position, thereby violating Storey's right to freely contract. Storey's principal complaint is that

the AOA vests Storey with a one-third interest in the Company, yet he was ultimately awarded only 6.39% of the Company's value. Storey explains that because the AOA is silent as to the interest a member retains upon voluntary withdrawal or expulsion, the trial court's determination should have been dictated by section 48-2c-708 of the Act, which provides for his assignee status and allows his interest to continue to accrue. Appellees agree that the Act governs here but argue that section 48-2c-708 applies only in the absence of expulsion or dissolution.

¶36    Storey's argument is dependent upon our acceptance of the position that he continued to be entitled to assignee status beyond the trial court's valuation date. As we explained above, we agree that Storey became an assignee upon his expulsion, *see* Utah Code Ann. § 48-2c-708(1)(e) (LexisNexis 2010), but that assignee status did not preclude the trial court from affixing a certain date as of which to value Storey's interest in the Company. Once that value was set, Storey was no longer entitled to share in the Company's profits. Because we affirm the trial court's setting of the date of valuation, we affirm the trial court's calculation of the value of Storey's assignee interest as of that date.

### III. Interim Mediation Agreement

¶37    The parties signed a mediation agreement in February 2009 in which they agreed to the value of certain property that Richard B. Holladay had contributed to the Company. It was not until after the trial had begun that Storey challenged the enforceability of the mediation agreement, arguing that he had not believed the mediation was binding. The trial court rejected Storey's argument and enforced the parties' mediated agreement, incorporating the parties' mediated property valuation into its ultimate calculation. Storey argues that the trial court's adoption of the mediation agreement resulted in a manifest injustice to him.

¶38    We determine that the trial court correctly enforced the mediation agreement because by the time of trial, Appellees had prepared to present evidence based only on the agreement. Furthermore, on appeal, Storey argues only that the trial court should have relieved him from the agreement to prevent an injustice. However, Storey has not demonstrated that binding him to the stipulation would be a manifest injustice, particularly in light of the prejudice Appellees would suffer as a result of Storey's late challenge to the stipulation on the first day of trial. This is insufficient cause to overcome the principle that "[o]rdinarily, courts are bound by stipulations between parties." *Yeargin, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 2001 UT 11, ¶ 19, 20 P.3d 287 (alteration in original) (citation and internal quotation marks omitted).

¶39    Storey also contends that the trial court miscalculated various aspects of his interest. Storey argues that the trial court failed to accurately incorporate its oral factual findings into its written findings, and as a result, the trial court's findings of fact are inadequate. However, Storey failed to preserve this issue for appeal because he did not notify the trial court of these alleged inaccuracies. Accordingly, we do not review this issue. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801 (holding that the plaintiff waived its argument regarding inadequate findings of fact because it failed to raise the issue "in such a way as to afford [the court] an opportunity to correct the alleged error").

¶40    To the extent that Storey also challenges the trial court's calculations based on the trial court's alleged inadequate findings of fact, he has failed to demonstrate that he preserved the issue by raising it to the trial court. *See* Utah R. App. P. 24(a)(5)(A) (stating that the appellant's brief must include "citation to the record showing that the issue was preserved in the trial court; or . . . a

statement of grounds for seeking review of an issue not preserved in the trial court"). We therefore do not address this argument.

## IV. Prejudgment Interest

¶41    Storey's final claim is that the trial court erred in failing to award him prejudgment interest on the value of his interest in the Company. Again, as Appellees point out, Storey fails to indicate where in the record he preserved his claim. Storey argues that he was not required to preserve this issue because "'the interest issue is injected by law into every action for the payment of past due money.'" *See Crowley v. Black*, 2007 UT App 245, ¶ 10, 167 P.3d 1087 (quoting *Fitzgerald v. Critchfield*, 744 P.2d 301, 304 (Utah Ct. App. 1987)). We disagree.

¶42    Storey relies on cases in which the trial court included prejudgment interest without a specific request from the prevailing party. *See, e.g., Kimball v. Kimball*, 2009 UT App 233, ¶¶ 10, 43, 217 P.3d 733 (affirming the trial court's inclusion of prejudgment interest in the judgment "even absent a specific request by [the plaintiff]"); *Fitzgerald*, 744 P.2d at 304 (affirming the trial court's inclusion of prejudgment interest in the judgment and explaining that "[the plaintiff's] failure to specifically plead a request for prejudgment interest is of no consequence because 'the interest issue is injected by law into every action for the payment of past due money'" (quoting *Lignell v. Berg*, 593 P.2d 800, 809 (Utah 1979))). In *Crowley v. Black*, 2007 UT App 245, 167 P.3d 1087 , the trial court denied the plaintiff's request for prejudgment interest. *Id.* ¶ 4. The plaintiff appealed, and the defendant argued that the plaintiff's request for prejudgment interest was untimely. *Id.* ¶ 10. This court rejected the defendant's argument, stating, "The failure to request prejudgment interest prior to judgment is not fatal because 'the interest issue is injected by law into every action for

the payment of past due money.'" *Id.* (quoting *Fitzgerald,* 744 P.2d at 304).

¶43    However, none of the cases relied on by Storey involved a new claim for prejudgment interest on appeal. Storey never requested that the trial court award him prejudgment interest, nor did the trial court award prejudgment interest sua sponte. In order to preserve his issue for appeal, Storey should have requested prejudgment interest below or otherwise brought the issue to the trial court's attention. Because Storey did not preserve this issue, we do not address it. *See 438 Main St.,* 2004 UT 72, ¶ 56.

## V. Punitive Damages

¶44    Appellees claim that the trial court erroneously failed to grant their request for punitive damages where the trial court found that Storey's conduct was egregious and that Storey had breached his fiduciary duty to other members of the Company. The trial court denied Appellees' claim for punitive damages, stating that, if awarded, they would serve as a "double punishment" because the trial court had already retroactively set the date for expulsion and valuation of Storey's interest. Appellees argue that this reasoning is flawed because the retroactive valuation constituted compensatory damages that were intended to make Appellees whole.

¶45    We previously explained that the trial court properly weighed the parties' respective conduct when retroactively assigning the expulsion date; however, we agree with Appellees that the trial court's retroactive valuation of Storey's interest served the purpose of compensating Appellees. Additionally, "a claim for breach of fiduciary duty is an independent tort . . . and can serve as the basis for punitive damages." *Norman v. Arnold,* 2002 UT 81, ¶ 35, 57 P.3d 997. The trial court therefore exceeded its discretion

by denying punitive damages on this basis. We thus reverse the trial court's denial of punitive damages and remand for the trial court to evaluate whether to award punitive damages. *See* Utah Code Ann. § 78B-8-201(1)(a) (LexisNexis 2012) ("Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.").

## VI. Attorney Fees

¶46    Appellees claim that the trial court erroneously failed to grant a request for attorney fees at the conclusion of the trial. The trial court previously awarded attorney fees paid for by the Company, excluding those for Appellees' breach of fiduciary duty claim. With regard to Appellees' breach of fiduciary duty claim, the trial court denied attorney fees "as a matter of law because this is not a tort action." Nonetheless the trial court stated that, "if they were available . . . they would be limited to the amount applicable to the efforts to remove Mr. Storey in his role as a manager and not all of the attorney[] fees expended in this action."

¶47    Appellees do not assert that either a statute or the AOA provide for attorney fees. *See generally Kealamakia, Inc. v. Kealamakia*, 2009 UT App 148, ¶ 7, 213 P.3d 13 ("The general rule in Utah, and . . . the traditional American rule, subject to certain exceptions, is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." (citation and internal quotation marks omitted)). Instead, Appellees argue that they are entitled to attorney fees because they successfully proved that Storey breached his fiduciary duty. They rely on the principle

that "breach of a fiduciary obligation is a well-established exception to the American rule precluding attorney fees in tort cases generally." *Id.*

¶48 We agree with Appellees that their fiduciary duty claim sounded in tort, that they prevailed, and that attorney fees were thus available as a matter of law. *See id.* Here, Storey's fiduciary duties arose not only out of the AOA but also out of independent duties as a limited liability company manager. *See Stevensen 3rd E., LC v. Watts*, 2009 UT App 137, ¶ 32, 210 P.3d 977 ("'In Utah, a claim for breach of fiduciary duty is an independent tort that, on occasion, arises from a contractual duty.' Like the fiduciary duties of general partners or corporate officers, a limited liability company manager's fiduciary duty arises from the corporate relationship itself, independent of any contractual duties." (citation omitted) (quoting *Norman v. Arnold*, 2002 UT 81, ¶ 35, 57 P.3d 997)). We reverse the trial court's denial of attorney fees for the fiduciary duty claim and remand for a determination of attorney fees and costs, aside from those previously determined in this case. We caution the trial court that the attorney fees shall be awarded only to the extent that Appellees are able to prove that they have damages other than merely the costs incurred in bringing their counterclaims. *See Neff v. Neff*, 2011 UT 6, ¶¶ 88–89, 247 P.3d 380 (holding that "even if attorney fees ought to be available as consequential damages in all claims for breach of fiduciary duty, we decline the invitation to adopt such a rule where the party has failed to prove any damages resulting from the breach" apart from "the harm incurred in bringing a successful claim for breach of fiduciary duty").

¶49 Finally, inasmuch as we affirm the trial court on the issues of backdating Storey's effective expulsion date and the date of the valuation, and reverse the denial of punitive damages and attorney fees, Appellees have prevailed on appeal. Accordingly, Appellees are entitled to their appellate attorney fees, and we remand to the

trial court to determine the appropriate amount of fees incurred on appeal.

CONCLUSION

¶50 The trial court correctly determined that it was authorized to backdate the date for expulsion and valuation. The trial court also correctly affixed December 31, 2005, as the effective date, based upon the parties' conduct. The trial court exceeded its discretion in determining that it had already awarded punitive damages, and we therefore reverse and remand for the trial court to evaluate whether to award punitive damages. We also reverse the trial court's denial of Appellees' attorney fees and remand for a determination of their reasonable attorney fees at trial and on appeal consistent with this opinion.

———————